MORIAL, Judge.
This case arises out of a collision at the intersection of Center Street and Judge Perez Drive in St. Bernard Parish. On March 31, 1974 at around 10:30 A.M., Dorothy Eagan was proceeding in an easterly direction on Judge Perez Drive in a 1972 Plymouth automobile owned by her husband Louis Eagan and upon reaching the intersection of Judge Perez Drive and Center Street her vehicle collided with a 1973 Volkswagen owned and operated by Roger Sims who had been proceeding in a southerly direction down Center Street. The impact of the collision sent the Eagan vehicle into an automobile driven by Mrs. Muriel Seymour which was stopped for a red light in the northbound lane of Center Street causing damage to the Seymour vehicle. Mrs. Eagan was carrying a guest passenger, her mother, Mrs. Ida Van Cleave, who suffered injuries in the accident.
Suits were filed by all parties involved and their insurers which were consolidated for trial. There were also several reeonven-tional demands and third party demands filed. The Louisiana Highway Department was made a defendant by all plaintiffs on the basis of allegations that the accident was caused by a malfunctioning traffic signal. The parties stipulated prior to trial that the light was not functioning properly at the time of the accident but the exact problem with the signal was not specified.
The trial judge decided that the malfunctioning of the traffic signal was not the cause of the accident but rather found that Roger Sims was negligent and the proximate cause of the accident in proceeding across the intersection on a red light.
In reviewing the testimony which is admittedly riddled with conflict, we find that the preponderance of the evidence supports the conclusions of the trial judge.
The conflicts in the evidence present a factual issue which requires a determination of the color positions of the traffic signals facing the parties involved at the time of the occurrence.
Mrs. Eagan and her mother Mrs. Van Cleave testified that the light facing Judge Perez Drive turned amber and then red as they approached the Center Street intersection. Mrs. Eagan brought her car to a stop and she contends that when the light turned green she looked both ways and then proceeded across the intersection.
Mr. Sims testified that as he approached the intersection from the north on Center Street he also observed an amber, red and then green light. He stated that he stopped for the red light and after it turned green he proceeded across the intersection. Thus the parties directly involved in the collision both claimed to have crossed on a green light.
Mrs. Seymour confirmed that she was stopped for a red light on the northbound lane of Center Street across the intersection from Sims. She testified that she had a red light before and after the impact occurred. She stated that she had surmised that the signal light was stuck on red because the car ahead of her had stopped and then crossed over on a red light. She stated she also intended to cross over on the red light when the time was right.
Deputy Calo, the investigating officer, testified that the neighborhood people at the scene of the accident were complaining about the malfunctioning signals. He testified that while he was attempting to clear the intersection, a similar accident almost occurred between two drivers at the same intersection, who both claimed to have a green light. The driver facing Judge Perez Drive claimed to have a green light and the deputy noted that the light facing Calo was also green and shut off the lights at the intersection.
Mrs. Georgia Jelks, who lives at 1504 Center, which is on the northwest corner of *582 Center Street and Judge Perez Drive testified that she noticed the night before the accident that the signals were malfunctioning. Specifically, she observed that the signals were stuck causing persons driving on Center Street to continually have a red light and those driving on Judge Perez to have a green light. She said this resulted in a back up of cars on Center Street causing her driveway to be blocked. She testified that the lights remained in this position up until the time of the accident.
Mr. Claude Griffin, who lives at 1417 Center Street which is on the southeast corner of the intersection, recalled that the lights were stuck the night before the accident in the same configuration observed by Mrs. Jelks.
Mrs. Albert Barbier, who lived on the southwest corner of the intersection testified that she observed at 6:30 A.M. on the morning of the collision that the light facing Center Street remained red.
Mr. Ellis Sappia, an electrical superintendent for the Highway Department was qualified as an expert by the court in the field of electrical lighting. He was of the opinion that when a set of lights servicing a street are stuck in a certain position, the lights facing intersecting streets are also frozen on one of the two remaining colors. He testified that it was mechanically impossible for opposing motions of traffic to have a green light at the same time.
The thrust of defendant's argument is his theory that the traffic signal was twisted 90° as the result of being struck by a vehicle causing a green light to be facing both Center Street and Judge Perez Drive at the same time. Defendant contends that the Highway Department was negligent in allowing the lights suspended over the intersection to hang dangerously low and in not timely repairing the signals after notice.
The defendant Highway Department argues that the “twisted light” theory proposed by defendant Sims was not supported in any way by the evidence at trial.
The Highway Department also denied having notice of the malfunctioning light prior to the occurrence of the accident. The Department introduced its logs into evidence showing it had a record of only two complaints at that intersection during the month of March 1974. The records show that on March 15 it was reported that one of the lights had been struck by a moving vehicle and was in need of repairs. A crew was dispatched to repair the light and raised the cable suspending the lights to fifteen feet two inches. The only other complaint recorded in the log was the one made after the accident took place at around 10:30 in the morning. The repair crew arrived at 11:15 A.M. and had the repairs completed by 2:00 P.M.
Sims argues that Mrs. Eagan was negligent in failing to see what she should have seen after looking both ways. Defendant Eagan argues that the damage to her car establishes that the Sims car was traveling at a high rate of speed and was not within her field of vision when she proceeded across the intersection.
After reviewing the record, we find no evidence to support defendant’s contention that the traffic signal was twisted 90° at the time of the accident. None of the witnesses who were present at the scene testified that the lights were twisted out of position. There was no evidence presented showing that, any of the signals had been hit by a vehicle after the March 15 repairs had taken place.
The only testimony involving the nature of the malfunction was with regard to the lights sticking in one position. Therefore, we accord no weight to defendant Sims’ “twisted light” theory.
The testimony of the neighborhood witnesses and Mrs. Seymour, who were all objective witnesses, that the lights facing Center Street were continually red on that morning convinces the court that Mr. Sims encountered a red light but, nevertheless, proceeded across the intersection.
We also find on the basis of the expert testimony regarding the mechanical functioning of the signals that Mrs. Eagan had a green light and properly entered into the *583 intersection. We find no evidence in support of defendant Sims’ argument that Mrs. Eagan entered the intersection negligently.
In light of these findings the mechanical defect in the light was not the proximate cause of the accident. However, if under the circumstances we had found the defect to be the cause of the accident, on the basis of the department records, we would be obliged to hold that the Department did not have actual or constructive knowledge of the malfunctioning light. Netterville v. Parish of East Baton Rouge, 314 So.2d 397 (La.App. 1 Cir. 1975).
We acknowledge the conflicts in testimony, however, this case presented a purely factual issue and, therefore, we are bound to give great weight to the findings of the trial judge. Canter v. Koehring Company, 283 So.2d 716 (La.1973).
For the foregoing reasons, the judgment of the trial court is affirmed.

AFFIRMED.